Matter of Aungst v Family Dollar (2023 NY Slip Op 05771)

Matter of Aungst v Family Dollar

2023 NY Slip Op 05771

Decided on November 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 16, 2023

536047
[*1]In the Matter of the Claim of Frank Aungst, Respondent,
v
Family Dollar et al., Appellants. Workers Compensation Board, Respondent.

Calendar Date:October 19, 2023

Before:Lynch, J.P., Aarons, Pritzker, McShan and Mackey, JJ.

Vaughan Baio & Partners, Syracuse (Cory A. DeCresenza of counsel), for appellants.
Bronk & Somers PC, Rochester (Mark C. Somers of counsel), for Frank Aungst, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.

Lynch, J.P.
Appeal from a decision of the Workers' Compensation Board, filed February 15, 2022, which ruled, among other things, that claimant sustained an accidental injury arising out of and in the course of his employment.In June 2020, claimant, a store manager, filed a claim for workers' compensation benefits alleging that he contracted COVID-19 on April 22, 2020 during the course of, and as a result of, his employment and later suffered a consequential stroke on May 1, 2020 requiring hospitalization. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim, contending that no accident occurred in the course of employment and that there was no causal relationship between the alleged injuries and claimant's employment. Following hearings and the submission of medical evidence and deposition testimony, a Workers' Compensation Law Judge (hereinafter WCLJ), among other things, established the claim for COVID-19 as an occupational disease and a consequential stroke. Upon administrative review, the Workers' Compensation Board modified the decision of the WCLJ,[FN1] finding that claimant provided credible testimony and sufficient evidence to demonstrate that an accident arose in the course of his employment resulting in a causally-related COVID-19 infection and that claimant sustained a consequential stroke. The carrier appeals.We affirm. "Initially, the contraction of COVID-19 in the workplace reasonably qualifies as an unusual hazard, not the natural and unavoidable result of employment and, thus, is compensable under the Workers' Compensation Law" (Matter of Pierre v ABF Frgt., 211 AD3d 1284, 1285 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; accord Matter of Holder v Office for People with Dev. Disabilities,215 AD3d 1201, 1201 [3d Dept 2023]; see also Workers' Compensation Law § 2 [7]). "Nevertheless, whether a compensable accident has occurred is a question of fact to be resolved by the Board, and its determination in this regard will not be disturbed where supported by substantial evidence" (Matter of Holder v Office for People with Dev. Disabilities,215 AD3d at 1201-1202; see Matter of Pierre v ABF Frgt., 211 AD3d at 1285; Matter of Leon v Monadnock Constr. Inc., 208 AD3d 1415, 1415 [3d Dept 2022]). "It is the claimant's burden to establish that the subject injury arose out of and in the course of the employment and, further, must demonstrate, by competent medical evidence, the existence of a causal connection between the injury and the employment" (Matter of Flores v Millennium Servs., LLC, 215 AD3d 1146, 1147 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Holder v Office for People with Dev. Disabilities, 215 AD3d at 1202). "The concept of time-definiteness required of an accident can be thought of as applying to either the cause or the result, and it is not decisive that a claimant is unable to pinpoint the exact [*2]date on which the incident occurred" (Matter of Pierre v ABF Frgt., 211 AD3d at 1285 [internal quotation marks and citations omitted]).[FN2] Notably, "[a]ccording to guidance issued by the Board and its related decisions involving claims stemming from the contraction of COVID-19, a claimant may meet his or her burden to show that an injury arose in the course of employment by demonstrating either a specific exposure to COVID-19 or prevalence of COVID-19 in the work environment so as to present an elevated risk of exposure constituting an extraordinary event; for example, workers with significant contact with the public in communities with high rates of infection or workers in a workplace experiencing high rates of infection" (Matter of Holder v Office for People with Dev. Disabilities, 215 AD3d at 1202 [emphasis added]; see Employer: Southern Glazer's Wine, 2022 WL 4397485, *6, 2022 NY Wrk Comp LEXIS G2335750 [WCB No. G233 5750, Sept. 20, 2022]; Employer: Long Is. DDSO, 2022 WL 594590, *5, 2022 NY Wrk Comp LEXIS 933, *12-13 [WCB No. G233 5526, Feb. 16, 2022]; Employer: Manhattan Psychiatric Ctr., 2021 WL 5748736, *5, 2021 NY Wrk Comp LEXIS 5600, *11 [WCB No. G281 3814, Nov. 29, 2021]; Employer: DOCCS Edgecombe Cor Facility, 2020 WL 7231882, *3-4, 2020, NY Wrk Comp LEXIS 15519, *9-10 [WCB No. G271 8395, Dec. 1, 2020]; New York State Workers' Compensation Board, COVID-19 & Workers' Compensation Q & A [June 2020], available at http://www.wcb.ny.gov/covid-19/information-workers.jsp#faqs).Claimant testified that, during spring 2020, he worked 50 or more hours per week as a retail store manager. His job responsibilities were typical of a store manager and included, among other things, opening and closing the store, counting money and direct contact with the public throughout the workday "almost constantly" while working at a register or on the floor. His duties also required him to be on the floor around the public for most of the day. Claimant was deemed an "essential employee" during the COVID-19 pandemic, and the "high[-]volume store" that he worked for remained open during March and April 2020. Given the lack of a face-mask policy in effect at the time, claimant stated that he often came into close contact with unmasked customers and, on a few occasions, had physical contact with certain customers. He further explained that the employer did not provide him or employees with face masks or sneeze guards until mid-April 2020. In late April 2020, claimant developed a fever, and he tested positive for COVID-19 on April 23, 2020. Claimant subsequently treated with his primary care physician and presented with no other symptoms beyond a mild cough; however, on May 1, 2020, claimant suffered a stroke and was hospitalized for about four weeks. Upon being admitted to the hospital, claimant was diagnosed with a left middle cerebral artery stroke. Claimant explained that, during the relevant time period prior to contracting COVID-19, he had not traveled out of the [*3]country or visited with family members, did not use public transportation and did very little shopping. Claimant also explained that, during March and April 2020 and prior to contracting COVID-19, he only received treatment for a cellulitis condition and had not ever been diagnosed or received treatment for high blood pressure. Following his stroke and admission to the hospital, claimant continued to test positive for COVID-19 on May 6, 2020 and May 10, 2020.[FN3] He continues to receive speech, occupational and physical therapy to address his deficits resulting from the stroke and remains out of work.In view of the foregoing, the Board, which credited claimant's testimony as it was entitled to do (see Matter of Guna v Delta Airlines, Inc., 202 AD3d 1190, 1191 [3d Dept 2022]), found that, although claimant did not offer any evidence of his specific exposure to COVID-19 in the workplace, his testimony provided sufficient evidence that, as a public-facing worker who worked over 50 hours per week in a high-volume store, he experienced an elevated risk of exposure to COVID-19 at work due to his consistent interactions with the public during the time period in question. Accordingly, we find that substantial evidence supports the Board's conclusion that claimant sustained a work-related injury by contracting COVID-19 in the course of his employment (see Workers' Compensation Law § 2 [7]; Matter of Pierre v ABF Frgt., 211 AD3d at 1286-1287; compare Matter of Holder v Office for People with Dev. Disabilities, 215 AD3d at 1202-1203).Turning to the Board's determination that claimant sustained a causally-related consequential stroke, "[a] consequential injury . . . is one that 'result[s] directly and naturally from claimant's prior injur[y] and the disability thereby produced,' " and whether an injury is consequential presents a factual question for the Board to resolve (Matter of Dowdell v Office of Family & Children Servs., 121 AD3d 1140, 1141 [3d Dept 2014], quoting Matter of Sullivan v B & A Constr., 307 NY 161, 164 [1954]). Robert Sawyer, claimant's vascular neurologist who first treated claimant upon his admission to the hospital, testified that, to a reasonable degree of medical certainty, claimant's COVID-19 infection caused the stroke. Sawyer explained that classic stroke patients that he sees have hypertension, diabetes, dyslipidemia and are current smokers — "they [have] been doing all these things." Claimant, however, had none of these risk factors for a stroke, his heart "is really good" and he presented with a classic pattern of a COVID-19 stroke. Further, Sawyer opined that, with COVID-19 patients, up to 5% of all diagnoses show up as a stroke with no real explanation and that about "50 percent of all COVID patients present with a neurologic symptom, not necessarily a stroke, but a neurologic symptom." Sawyer also concluded that he could not attribute claimant's stroke to anything other than COVID-19. Although the carrier's occupational medicine [*4]consultant who performed an independent medical examination of claimant concluded that claimant's stroke was not associated with COVID-19, the Board rejected this opinion because it was based upon the possibility that claimant's COVID-19 test in late April 2020 was a false positive and because the consultant was unaware of claimant's subsequent positive tests for COVID-19 while in the hospital in May 2020. Given the Board's "authority to resolve conflicting medical opinions and to draw reasonable inferences from record evidence" (Matter of Brennan v Village of Johnson City, 213 AD3d 1058, 1060 [3d Dept 2023] [internal quotation marks and citations omitted]), the Board was entitled to reject the opinion of the carrier's consultant and credit Sawyer's opinion, and we therefore find that there is substantial evidence in the record to support the Board's determination that claimant sustained a causally-related consequential stroke (see Matter of Dowdell v Office of Family and Children Services, 121 AD3d at 1141; see also Matter of Allen v CPP-Syracuse, Inc., 194 AD3d 1278, 1280 [3d Dept 2021]). To the extent that the carrier's remaining contentions are properly before us, we have considered them and find them to be without merit.Aarons, Pritzker, McShan and Mackey, JJ., concur.ORDERED that the decision is affirmed, with costs to claimant.

Footnotes

Footnote 1: The Board indicated that, although the WCLJ established the claim as an occupational disease, the claim is more appropriately reviewed as an accident and whether claimant sustained a work-related contraction of COVID-19.

Footnote 2: To the extent that claimant relies upon the presumption of compensability set forth in Workers' Compensation Law § 21, "such presumption does not entirely relieve a claimant from the burden of establishing that his or her injury [exists or that it] arose out of and in the course of the claimant's employment" (Matter of Petesic v Fox 5 N.Y., 174 AD3d 1198, 1199 [3d Dept 2019]; see Matter of Issayou v Issayuou Inc., 174 AD3d 1277, 1277 [3d Dept 2019], lv denied 34 NY3d 909 [2020]). "Moreover, the statute is inapplicable inasmuch as the determination as to causal relationship, or the lack thereof, in this matter was not based upon the presumption contained therein but, instead, upon the medical evidence and testimony adduced as part of the underlying hearing" (Matter of Bond v New York City Health & Hosp. Corp., 213 AD3d 1090, 1091 [3d Dept 2023] [internal quotation marks and citations omitted]).

Footnote 3: Claimant tested negative on May 8, 2020 and then tested negative on two consecutive tests conducted on May 14, 2020 and May 15, 2020 resulting in his May 16, 2020 admission to a rehabilitation unit at the hospital.